**In re George J. GOLDSBOROUGH, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 93–BG–650.**

District of Columbia Court of Appeals.

Submitted Jan. 12, 1995.

Decided Feb. 23, 1995.

Before FERREN and SCHWELB, Associate Judges, and BELSON, Senior Judge.

SCHWELB, Associate Judge:

In this reciprocal disciplinary proceeding against respondent George J. Goldsborough, a member of our Bar since 1953, the Board on Professional Responsibility has recommended that this court suspend Goldsborough from practice for two years and that we condition reinstatement upon proof of fitness. No exceptions to the Board's Report and Recommendation having been filed, we impose the discipline proposed by the Board.

**I.**

The facts of this unusual case are set forth in detail in the opinion of the Maryland Court of Appeals, *Attorney Grievance Comm'n of Md. v. Goldsborough,* 330 Md. 342, 624 A.2d 503 (1993) (*Goldsborough I* ). Briefly, on two separate occasions in 1978, Goldsborough pulled the initial complainant, an adult female client, over his knee, chastised her for being a "bad girl," and spanked her lightly on the buttocks.

Several years later, this complainant heard that Goldsborough was continuing to engage in similar conduct and reported her experiences to the Maryland disciplinary authorities. The ensuing investigation revealed that Goldsborough had behaved in this manner towards other women as well. Specifically, a second client related that Goldsborough had put his arm around her and kissed her on the neck and cheek; the woman reproved him and retained other counsel. Goldsborough's former secretary, who was seventeen years old when she began working for him, testified that over a period of almost two years, Goldsborough regularly spanked her for typing errors and other "no brains," and that he sometimes required her to bare her buttocks for the spanking.

In sworn testimony before a Circuit Judge to whom the case had been referred by the Maryland Court of Appeals, Goldsborough denied most of the allegations against him. He also provided misleading information to

---

Maryland Bar Counsel.[1] The judge found by clear and convincing evidence that Goldsborough was "deliberately untruthful" in his testimony. *Goldsborough I,* 624 A.2d at 508. He concluded that the spanking of the first client and the kissing of the second constituted conduct which was "prejudicial to the administration of justice," and which "adversely reflect[ed] on [Goldsborough's] fitness to practice law," in violation of Maryland's former DR 1–102. He further concluded that the spanking of the secretary, which continued after January 1, 1987, the effective date of Maryland's Rules of Professional Conduct, constituted "conduct that is prejudicial to the administration of justice," in violation of Rule 8.4(d) of the Maryland Rules. Finally, the judge held that Goldsborough had violated Rule 8.1 by "knowingly mak[ing] a false statement of material fact" in a disciplinary proceeding and by failing in that proceeding "to disclose a fact necessary to correct a misapprehension...."

Goldsborough sought review of the Circuit Judge's decision in the Maryland Court of Appeals on a variety of grounds. In *Goldsborough I,* that court, in a comprehensive opinion, firmly rejected all of Goldsborough's contentions and sustained the judge's findings. The court ordered that Goldsborough

> be indefinitely suspended from the practice of law, with the right to apply for reinstatement no sooner than two years from the date of this opinion,[2] and only when he is able to persuade this Court that the conduct which necessitated his suspension will never be repeated.

*Goldsborough I,* 624 A.2d at 514.

## II.

On June 3, 1993, based upon Goldsborough's suspension in Maryland, this court temporarily suspended him from practicing law in the District and ordered him to show cause why reciprocal discipline should not be imposed. We also referred the matter to the Board for a recommendation as to the appropriate discipline. Goldsborough did not respond to the Order to Show Cause, nor has he participated in any way in the disciplinary proceedings in the District.

On August 11, 1994, the Board issued a twenty-four page Report and Recommendation. The Board had "no trouble concluding that the misconduct regarding misrepresentations and false testimony established in Maryland as violating Maryland Rules 8.1 and 8.4(a) constitutes misconduct in the District of Columbia." The Board was also of the opinion that Goldsborough's dishonest acts had "seriously interfere[d] with the administration of justice" within the meaning of Rule 8.4(d) of our Rules of Professional Conduct. These Rules became effective on January 1, 1991, well after the conduct at issue here, but the Board concluded that Goldsborough's misrepresentations were also in violation of DR 1–102(A)(5), which proscribed conduct "prejudicial to the administration of justice" before the effective date of our present Rules.

The Board found more difficult the question whether Goldsborough's spanking and kissing of his clients and his spanking of his secretary violated the District's disciplinary rules. In the Board's view, the spanking and kissing did not, under District of Columbia law, constitute conduct that is "prejudicial to the administration of justice." The Board construed this court's jurisprudence, and particularly *In re Shorter,* 570 A.2d 760, 768 (D.C.1990) (per curiam), as requiring a nexus, not present in this case, between the misconduct and a judicial or administrative proceeding.[3] The Board concluded, however, that Goldsborough's conduct vis-a-vis the two women clients violated DR 7–101(A), which provided that a "lawyer shall not intentional-

---

1. The first complainant had alleged that two partnerships of which Goldsborough had been a member had been dissolved as a result of his misconduct. Goldsborough advised Bar Counsel in writing that "[n]o partnerships of which I have ever been a member have been dissolved." The evidence established that two professional associations, which were not technically "partnerships," had terminated Goldsborough's employment as a result of his actions vis-a-vis female clients and employees. *Goldsborough I,* 624 A.2d at 506–07.

2. *Goldsborough I* was decided on May 12, 1993.

3. *See also In re Reynolds,* 649 A.2d 818, 822 (D.C.1994) (per curiam); *cf. id.,* at 819 (Farrell, J., joined by Terry, J., concurring).

ly ... (3) [p]rejudice or damage his client during the course of the professional relationship."[4] The Board thought it proper to invoke this disciplinary rule, although its counterpart had not been relied upon in Maryland, because the District of Columbia proceedings had been initiated by an Order to Show Cause, and because Goldsborough had been accorded ample opportunity to respond to any allegations against him but had failed to avail himself of that opportunity.

After examining this court's precedents, the Board concluded that "[t]he combination of intentional misrepresentations and sexual misconduct, given the aggravating factors discussed above, makes it clear that a two-year suspension would be appropriate in this jurisdiction." The Board therefore recommended that Goldsborough be suspended from the practice of law in the District of Columbia for two years, with reinstatement conditioned on proof of fitness.

## III.

The imposition of reciprocal discipline is governed by D.C.Bar R. XI, § 11. Section 11(c) provides that such discipline is to be imposed unless the attorney demonstrates, by clear and convincing evidence, that one of the following five conditions existed:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the Court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

There is "a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992) (citation omitted).

In the present case, Goldsborough has not participated in the proceedings in this jurisdiction, either before the Board or in this court, and has made no effort to rebut the foregoing presumption. He has not alleged any infirmity in the Maryland proceedings, nor has he claimed that imposition of reciprocal discipline would be inappropriate for any other reason. This court issued an order requiring Goldsborough to show cause, if any there be, why reciprocal discipline should not be imposed. By failing even to respond to that order, *cf. D.C. Transit System, Inc. v. Young*, 293 A.2d 488, 489 (D.C.1972), Goldsborough has effectively defaulted on the issue whether such cause exists. By failing to object in this court to the Board's recommendation, Goldsborough has compounded his default.

Under these circumstances, we are satisfied that reciprocal discipline can and should be imposed without our having to resolve some difficult questions raised in the Board's comprehensive and scholarly opinion. Specifically, we decline, in the absence of the refinement of the issues, which would be provided by the adversarial process,[5] to

---

**4.** The Board was apparently of the opinion that Goldsborough's regular spanking of his young secretary over a substantial period of time did not violate any District of Columbia disciplinary rule then applicable to Goldsborough. *Cf. Goldsborough I*, 624 A.2d at 511 (misconduct was "relevant to law practice"); *In re Adams*, 428 N.E.2d 786, 787 (Ind.1981) (per curiam) (kissing female client and raising her blouse held to be conduct indicating moral turpitude and lack of fitness to practice law, but lenient negotiated discipline imposed).

In the present case, the Board pointed out that Goldsborough's misconduct predated the adop-

tion, effective in 1991, of Rule 9.1 of our Rules of Professional Conduct, which provides in pertinent part that a lawyer "shall not discriminate against any individual in conditions of employment because of that individual's ... sex." *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 61–67, 106 S.Ct. 2399, 2402–06, 91 L.Ed.2d 49 (1986) (explicating relationship between sexual harassment and discrimination in employment).

**5.** *See, e.g., United States v. Fruehauf*, 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476 (1961) (courts should not give "advance expressions of legal judgment" in the absence of "that clear

adopt any precedentially authoritative construction, as applied to the present context, of the phrase "prejudicial to the administration of justice," see Rule 8.4(d) of the Rules of Professional Conduct, or of the provision in former DR 7–101(A)(3) that a lawyer shall not "[p]rejudice or damage his client during the course of the professional relationship." We likewise need not decide whether, in a reciprocal discipline case in which the issue has been contested, the Board could permissibly invoke a disciplinary rule different from the one on which the court relied in the jurisdiction in which the initial discipline was administered. By defaulting, Goldsborough has, at least on these facts, admitted the existence of liability, and has thus conceded that the imposition of reciprocal discipline is warranted. *See, e.g., Fehlhaber v. Indian Trails, Inc.,* 425 F.2d 715, 717 (3d Cir.1970) (per curiam).[6]

Turning to the question of the proper sanction, we are required to

adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.

D.C. Bar R. XI, § 9(g). The deferential standard mandated by this provision becomes even more deferential where, as here, the attorney has failed to contest the proposed sanction. Substantially for the reasons stated by the Board, we agree with the Board's conclusion that a two-year suspension, with a requirement of proof of fitness, would be appropriate in this jurisdiction. *See, e.g., In re Hutchinson,* 534 A.2d 919, 924–25 (D.C.1987) (en banc); *In re Jones,* 599 A.2d 1145, 1148–49 (D.C.1991) (per curiam); *In re Lenoir,* 585 A.2d 771, 774–75 (D.C.1991) (per curiam). This is so even if

we assume, without deciding, that Goldsborough's spanking of his secretary violated no District of Columbia disciplinary rule then in effect. *Cf. In re Youmans,* 588 A.2d 718, 719 (D.C.1991) (per curiam).

We also agree with the Board that, because Goldsborough has not filed the affidavit required by D.C.Bar R. XI, § 14(f), his suspension should be prospective, and that the two-year period should begin to run upon the filing of a satisfactory affidavit. Accordingly, George J. Goldsborough is hereby suspended from the practice of law in the District of Columbia for a period of no less than two years, with reinstatement conditioned on proof of fitness.

*So ordered.*

---

concreteness provided when a question emerges precisely framed and necessary for a decision from a clash of adversary argument ...."); *Allen v. United States,* 603 A.2d 1219, 1229 n. 20 (D.C. 1992) (en banc) (declining to address issues that have not been "tested by the fires of adversary presentation") (citation omitted).

**6.** A different result might obtain, notwithstanding Goldsborough's default, if the allegations against him were insufficient on their face to allege a violation of the disciplinary rules. *Cf.*

*Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1392–93 (9th Cir.1988) (default judgment reversed where complaint failed to state claim upon which relief could be granted). "[T]he fact that the litigant sued did not respond does not vitiate the court's responsibility to do justice." *American Cyanamid Co. v. Page,* 66 F.R.D. 143, 145 (D.S.C.1975). Plainly, however, this is not a case in which the reciprocal discipline recommended by the Board is unjust to Goldsborough.