**In re Charles H. BOWSER,**
**Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 98–BG–1322.**

District of Columbia Court of Appeals.

Argued April 4, 2001.
Decided April 19, 2001.

John O. Iweanoge, Washington, DC, for respondent.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

PER CURIAM.

The Board on Professional Responsibility (the Board) has recommended that respondent be suspended from the practice of law in the District of Columbia for one year. The discipline stems from conduct that resulted in respondent's plea of guilty in the United States District Court for the Eastern District of Virginia to making false statements (18 U.S.C. § 1001) to the Immigration and Naturalization Service in connection with his representation of a client applying to become a naturalized citizen. A Hearing Committee found, and the Board agreed, that respondent's conduct leading to the conviction did not involve moral turpitude. *See, e.g., In re Cerroni*, 683 A.2d 150 (D.C.1996). The Board nonetheless determined that respondent had engaged in multiple ethical violations, including commission of a criminal act reflecting adversely on his honesty.

Respondent does not dispute the ethical violations nor the recommendation of a one-year suspension. His sole challenge is to the Board's refusal to recommend

that the suspension be ordered *nunc pro tunc* to September 30, 1998, or at the least to March 17, 2000, when, according to respondent, he filed successive affidavits in compliance with D.C. Bar Rule XI, § 14(g). The Board determined that neither affidavit conformed to the requirements of section 14(g), specifically rejecting respondent's claim of "substantial compliance." Bar Counsel asserts that respondent did not file a satisfactory affidavit until July 3, 2000, so that his suspension should run from that date.

We accept the Board's conclusion as to the ethical violations shown and its recommendation of a one-year suspension. *See* D.C. Bar Rule XI, § 9(g); *In re Goldsborough*, 654 A.2d 1285, 1287–88 (D.C. 1995). We further agree with the Board that respondent's first two affidavits did not meet the requirements of Rule XI, § 14(g), and that the shortcomings were not "technical" as respondent now characterizes them. We have examined the third affidavit filed July 3, 2000, and agree with Bar Counsel that it complies with the rule's requirements.

We publish the relevant portions of the Board's report, attached hereto, because it demonstrates cogently the importance of the affidavit requirement and why respondent's successive failures to comply with it cannot be minimized. We especially note the Board's recognition that a disbarred or suspended attorney is not relieved of the obligation to comply fully with Rule XI, § 14(g) by Bar Counsel's failure to file with the Board and the court a "Notice of Non–Compliance," as permitted by the Board's internal Rule 9.9. As the Board correctly states, "Neither we nor Bar Counsel have power to waive compliance with [D.C. Bar Rule XI,] § 14."

For these reasons and those stated in the Board's report, it is

ORDERED that Charles H. Bowser be, and hereby is, suspended for one year from practicing law in the District of Columbia, *nunc pro tunc* to July 3, 2000.

## *A P P E N D I X*

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of:

CHARLES H. BOWSER,

Respondent.

Bar Docket Nos. 283–98 and 519–98

## *REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

This case comes to us from Hearing Committee No. 5, which concluded that the criminal offense of which Respondent was convicted, a violation of 18 U.S.C. § 1001, did not involve moral turpitude on the facts but his underlying conduct violated a number of the Rules of Professional Conduct. The Committee recommended a one-year suspension, without a fitness requirement.

Neither side has excepted to the Hearing Committee's findings and conclusions on the violations or to the Committee's recommended sanction. There remains a single issue-when the suspension period, if ordered by the Court, should begin to run. That requires us to decide the sufficiency of Respondent's showing of compliance with D.C.App. R. XI ("Rule XI"), § 14(g), imposing certain affidavit requirements on suspended attorneys. Respondent asserts that he has complied. Bar Counsel claims that he has not.

We are constrained by our reading of the relevant authorities and the facts of record to agree with Bar Counsel. The recommended period of suspension should begin to run when Respondent complies with Rule XI, § 14(g), as we construe it in this Report and Recommendation.

\* \* \* \*

### 4. *The Rule XI, § 14(g) Issue.*

We turn now to a consideration of when Respondent's suspension should begin to run, if our recommendation for a one-year suspension is upheld. Bar Counsel and Respondent differ on whether he has complied with Rule XI, § 14(g), which provides:

> "*Required Affidavit and Registration Statement.* Within ten days after the effective date of an order of disbarment or suspension, the disbarred or suspended attorney shall file with the Court and the Board an affidavit:
>
> (1) Demonstrating with particularity, and with supporting proof, that the attorney has fully complied with the provision of the order and with this rule;
>
> (2) Listing all other state and federal jurisdictions and administrative agencies to which the attorney is admitted to practice; and
>
> (3) Certifying that a copy of the affidavit has been served on Bar Counsel. The affidavit shall also state the residence or other address of the attorney to which communications may thereafter be directed. The Board may require such additional proof as it deems necessary. In addition, for five years following the effective date of a disbarment or suspension order, a disbarred or suspended attorney shall continue to file a registration statement in accordance with Rule II, stating the residence or other address to which communications may thereafter be directed, so that the attorney may be located if a complaint is made about any conduct of the attorney occurring before the disbarment or suspension. See also section 16(c)."

Respondent asserts that he is entitled to have the suspension run *nunc pro tunc* from some prior date. Under Bar Counsel's analysis, the period of suspension would not begin to run until Respondent complies with Rule XI, § 14(g).

We find that the relevant facts on this issue are as follows:

1. The Court suspended Respondent from practice on September 4, 1998. The suspension Order stated:

"Respondent's attention is drawn to the requirements of D.C. Bar Rule XI, § 14 relating to suspended attorneys and to the provisions of § 16(c) dealing with the timing of eligibility for reinstatement as related to compliance with § 14, including the filing of the required affidavit." [1]

2. On September 29, 1998, Respondent executed the following "AFFIDAVIT AND REGISTRATION STATEMENT":

"I, Charles H. Bowser, Attorney at Law, of 2425 Pimpernel Drive, Waldorf, 20603–4951 have fully complied with the provisions of the order from the District of Columbia, Court of Appeals No. 98 BG 1322 (Board of [*sic* ] Professional Responsibility Docket No. 283–98 dated September 17, 1998 and Rule XI of the District of Columbia Bar Rules).

I am admitted to practice law in the Court of Appeals of the District of Columbia, the District Court of the Virgin Islands of the United States, U.S. Department of Justice Executive Office of Immigration Review (Office of the Immigration Judge); and the U.S. District Court for the District of Columbia, and the United States Court of Appeals for the District of Columbia Circuit.

All further communications regarding my cases should be referred to Attorneys Mohamed Alamgir and Thomas Eapen, Law Offices of Eapen and Alamgir, 1511 K Street, Suite 730, Washington, D.C., 20005, 202–842 5165 and 202–842–5166."

The certificate of service recites that this statement was mailed "to District of Columbia Court of Appeals, Board of [*sic* ] Professional Responsibility." There is no recital of filing with the Court or service on Bar Counsel. The stamp on the statement states that it was received by the Board on September 30, 1998.

3. Bar Counsel's Proposed Findings of Fact, Conclusions of Law and Recommendation as to Sanction, filed with the Board August 19, 1999, after the hearing before the Hearing Committee, stated, at 17, that Respondent's suspension should commence when he files the affidavit required by

---

1. Section 16(c), referred to in § 14 and the September 4, 1998 Order, provides:

"(c) *Reinstatement of Attorneys Suspended on Other Grounds.* An attorney suspended for more than one year before September 1, 1989 shall be subject to the reinstatement requirements in effect on the date of the suspension. An attorney suspended for a specific period of time on or after September 1, 1989, without being required to furnish proof of rehabilitation under section 3(a)(2) of this rule shall be reinstated without further proceedings upon the expiration of the period specified in the order of suspension, provided that the attorney has timely filed with the Court the affidavit re-

quired by section 14(g) and such other proof as may be required under section 14(h). Notwithstanding the foregoing, a suspended attorney shall not be eligible for reinstatement until a period of time equal to the period of suspension shall have elapsed following the attorney's compliance with section 14, and a disbarred attorney shall not be eligible for reinstatement until five years shall have elapsed following the attorney's compliance with section 14. If the attorney has failed in any respect to comply with section 14, the Board shall so notify the Court, and the Court thereafter shall enter an appropriate order."

Rule XI, § 14(g) and that, to date, he had not done so.

4. Respondent's Proposed Findings of Fact and Conclusion of Law and Recommendation for Appropriate Sanction, filed with the Board October 18, 1999, stated, at 11, that the recommended suspension should be *nunc pro tunc* "given that respondent filed the affidavit required by D.C.App. R. XI, § 14(g) on September 29, 1998." Respondent's submission had attached to it a copy of the September 29, 1998 "AFFIDAVIT AND REGISTRATION STATEMENT." Respondent also asserted that "the board [*sic* ] did not file a notice of non-compliance after Respondent filed his affidavit and registration statement." *Id.*[2]

5. On January 28, 2000, the Office of Bar Counsel, advising this Board that it did not

2. Board Rule 9.9, *Required Affidavit of Disbarred or Suspended Attorneys,* provides:

"(a) *Scope and Form of Affidavit.* Within ten (10) days after the effective date of disbarment or suspension, a disbarred or suspended attorney shall file with the Court and the Board Office, and shall serve a copy upon Bar Counsel, an "Affidavit of Compliance with Section 14 of Rule XI." Such affidavit shall include, to Bar Counsel's reasonable satisfaction, the following: (a) all steps taken by the attorney to comply with the disbarment or suspension order; (b) all other steps taken to comply with Section 14 of Rule XI, including without limitation (i) photocopies of all notices (including return receipts), motions to withdraw, and letters of transmittal (or offers to return) involving papers and other property to which clients of the attorney are entitled; (ii) the attorney's current residence or other address where communications may be directed to him; (iii) the attorney's understanding of the continuing obligation during disbarment or suspension for a period of up to five years to file both annual and supplemental registration statements in accordance with D.C. Bar R. II, § 2 (with copies thereof served on Bar Counsel) listing such attorney's residence or other address where communications may be directed to him; (iv) the attorney's understanding of the continuing obligation to keep and maintain records (including copies of all pertinent documents) showing the steps taken by such attorney to comply with Section 14 of Rule XI; and (v) the attorney's understanding that if the affidavit required by this Board Rule is rejected by Bar Counsel in a Notice of Non Compliance as provided below in subsection (b) of this Board Rule, the period of disbarment or suspension may be extended by the Court.

(b) *Notice of Non Compliance.* Bar Counsel may file with the Court and in the Board office a Notice of Non Compliance, and Bar Counsel shall serve a copy thereof on the disbarred or suspended attorney, if the following steps and events have previously occurred: (i) Bar Counsel served on the attorney not less than thirty (30) days prior to the filing of the Notice of Non Compliance a blank form of "Affidavit of Compliance With Section 14 of Rule XI" together with copies of Chapter 9 of the Board Rules plus a warning that failure to submit such Affidavit in proper form may result in suspending the running of time during the attorney's disbarment or suspension ordered by the Court; and (ii) Bar Counsel determined by the time of filing the Notice of Non Compliance either that the required Affidavit had not been filed with the Court and served on Bar Counsel within ten (10) days after the effective date of disbarment or suspension order, or that the Affidavit as filed and served was inadequate due to incompleteness or other valid reason.

(c) *Review of Notice of Non Compliance.* The attorney may file with the Board Office, and shall serve on Bar Counsel, a request for the Board to review specified objections to a Notice of Non Compliance issued under subsection (b) above. Such request shall be submitted within ten (10) days after the Notice of Non Compliance is served. The matter will be decided by the Board on the papers of the parties unless the Board determines that there are disputed issues of fact and therefore enters an order referring such issues to a Hearing Committee for an evidentiary hearing and report to the Board. If the Board decides that the attorney has failed to comply with Rule XI, Section 14, the Board shall file a report with the Court asking the Court to enter an appropriate order."

note an exception to the Hearing Committee Report, noted that "Respondent has not filed the affidavit required by D.C.App. R. XI, § 14(g)." Letter of Michael S. Frisch to Elizabeth J. Branda, January 28, 2000.

6. By letter received February 7, 2000, counsel for Respondent advised this Board that he would not note an exception to the Hearing Committee Report "to ensure a fast and speedy resolution of this matter since he has been suspended from the practice of law for over one year recommended by the Hearing Committee." However, Respondent noted:

"an exception to Bar Counsel's position that he has not filed the affidavit required by D.C.App. R. XI, § 14(g). Respondent filed the required affidavit required by the rule and *at no* time did Bar Counsel file a "Notice of Non Compliance" a[s] required by Board Rules [*sic* ] 9.9(b)."

Letter from John O. Iweanoge to Elizabeth J. Branda, February 2, 2000.

7. On February 11, 2000, Ms. Branda forwarded to the Office of Bar Counsel a copy of the Respondent's September 29, 1998 "AFFIDAVIT AND REGISTRATION STATEMENT" filed with the Board on September 30, 1998. Letter to Michael S. Frisch from Elizabeth J. Branda, February 11, 2000.

8. On February 16, 2000, the Office of Bar Counsel responded to the letter of February 2, 2000, from Respondent's counsel. It stated that the affidavit of September 29, 1998, was filed with the Board but not with the Court and was not served on Bar Counsel. It further stated:

"we were first apprised of the existence of the affidavit when it was appended to Respondent's post-hearing brief."

The Office also asserted that the affidavit failed to comply with Rule XI, § 14(g) because it failed "to demonstrate with particularity, and with supporting proof, that Respondent fully complies with the provisions of the order and the Rule."

Bar Counsel also noted that the Hearing Committee found that Respondent had failed to notify a client (Ms. Brathwaite) of his suspension, citing H.C. Rep. at 6–7, and urged that "Respondent should not receive credit on the interim suspension, for reinstatement purposes, based on the affidavit filed with the Board." Letter from Michael S. Frisch to Elizabeth J. Branda, February 16, 2000.

9. On March 6, 2000, counsel for Respondent sent the Board a second affidavit from Respondent, stating that he had mailed the AFFIDAVIT AND REGISTRATION STATEMENT of September 29, 1998, to the Office of Bar Counsel by regular mail on September 30, 1998. He further stated that this mailing was sent following a meeting he had with Mr. Frisch in which Mr. Frisch advised him to mail to the Office of Bar Counsel a copy of the document which Respondent had previously sent to the Court. The letter of March 6, 2000, from Respondent's counsel further maintained that the affidavit of September 29, 1998, "substantially complied" with Rule XI, § 14(g). He stated:

"The affidavit and registration statement contains Respondent's address, jurisdiction he was licensed to practice law and steps taken to comply with suspension order and pending cases. Although Respondent's affidavit did not specifically state that he did not have any non-litigated clients or litigated clients before District of Columbia court or administrative agencies to inform of his suspension, he stated in his affidavit that all his cases had been transferred to Law Offices of Eapen and Alagmir [sic]. Furthermore, at the time of the suspension, Respondent had only administrative proceedings pending in the United States Immigration and Natural-

ization Service, which were transferred to Law Offices of Eapen and Alamgir after he was barred by the United States District Court, as part of the plea agreement, from practicing immigration law."

Letter from John O. Iweanoge to Elizabeth J. Branda, March 6, 2000.

10. On March 13, 2000, the Office of Bar Counsel responded to this letter from Respondent's counsel, adhering to the view that Respondent's affidavit failed to satisfy Rule XI, § 14(g), because it failed "to demonstrate, with particularity and supporting proof, that Respondent notified clients of his suspension and consequent inability to act as an attorney." Letter from Michael S. Frisch to Elizabeth J. Branda, March 13, 2000.

11. On March 17, 2000, Respondent filed a second AFFIDAVIT AND REGISTRATION STATEMENT, executed March 3, 2000. It stated in full:

"I, Charles H. Bowser, 3200 Carnegie Hall Circle, Olney, MD 20832, formerly of 2425 Pimpernel Drive, Waldorf, MD 20603–4951, have fully complied with the provisions of the order from the District of Columbia, Court of Appeals No. 98 BG 1322 (Board of Professional Responsibility Docket No. 283–98 dated September 17, 1998 and Rule XI of the District of Columbia Bar Rules). Regarding notice to clients in non-litigated cases, at this time I do not have any clients or cases in the District of Columbia or any other jurisdiction. Regarding notice to clients in litigated cases, at this time I do not have any clients or cases in the District of Columbia or any other jurisdiction. Regarding notice [to] adverse parties, this attorney has no cases or clients in which there is an adverse party. At this time I have no cases or clients as I am not practicing law in any jurisdiction. All clients and former cases, client papers and property(s) have been transferred or properly referred to Attorneys Mohamed Alamgir and Thomas Eapen, Law Offices of Eapen and Alamgir, now located at 1010 Vermont Avenue, N.W., Suite 618, Washington, D.C. 20005, 202–842–5165 and 202–842–5166.

At the time of the issuance of the original Affidavit and Registration Statement, I was a member in good standing to practice law in the Court of Appeals of the District of Columbia, the District Court of the Virgin Islands of the United States, U.S. Department of Justice–Executive Office of Immigration Review (Office of the Immigration Judge); and the District Court for the District of Columbia, and the United States Court of Appeals for the District of Columbia Circuit."

The Certificate of Service recites that this AFFIDAVIT AND REGISTRATION STATEMENT was mailed to the Court, the Board and Bar Counsel on March 15, 2000.

12. On May 18, 2000, Bar Counsel filed another letter stating that it had reviewed Respondent's most recent AFFIDAVIT AND REGISTRATION STATEMENT of March 3, 2000, and that it still failed "to demonstrate, with particularity and supporting proof, that Respondent notified his clients, adverse parties and the Court of his suspension and consequent inability to act as an attorney." Accordingly, Bar Counsel urged that the suspension should, for reinstatement purposes, be deemed to commence when Respondent fully complies with Rule XI, § 14(g).

There are two possible dates for *nunc pro tunc* treatment of the recommended period of suspension: (1) September 30, 1998, when Respondent filed with the Board his first AFFIDAVIT AND REGISTRATION STATEMENT; and (2) March 17, 2000, when he filed his second

AFFIDAVIT AND REGISTRATION STATEMENT. If the first date were adopted, Respondent would have served the recommended one-year period of suspension by the time a final Order is entered in this case, and he would be entitled to immediate reinstatement. If the second date were adopted, he would receive credit for the period between March 17, 2000 and the effective date of any final Order of suspension.[3] If neither date were adopted, the commencement of the period of suspension, *nunc pro tunc* or otherwise, would depend on the filing of an affidavit sufficient to comply with Rule XI, § 14(g). We discuss each possibility in turn.

1. *The first AFFIDAVIT AND REGISTRATION STATEMENT.*

We cannot regard the September 29, 1998 AFFIDAVIT AND REGISTRATION STATEMENT as complying with Rule XI, § 14(g). Even under a generous standard of "substantial compliance," this document does not meet the test.

Section 14(g) has a number of requirements:

1. the affidavit must be filed within 10 days of the order of disbarment or suspension;
2. it must be filed with the Court and the Board;
3. it must be served on Bar Counsel;
4. it must demonstrate "with particularity and with supporting proof," that the attorney has fully complied with the suspension order and Rule XI;
5. it must list all other state and federal jurisdictions or administrative agencies to which the attorney is admitted to practice; and
6. it must state the residence or other address of the attorney to which

communications may thereafter be directed.

Since § 14(g) requires a showing that the suspended attorney has "fully complied" with "*this rule,*" the attorney must meet the requirement of the other provisions of Rule XI, § 14. Specifically § 14(a)-(d) requires:

"(a) *Notice to Clients in Non Litigated Matters.* An attorney ordered to be disbarred or suspended shall promptly notify by registered or certified mail, return receipt requested, all clients on retainer and all clients being represented in pending matters other than litigated or administrative matters or proceedings pending in any court or agency, of the order of disbarment or suspension and of the attorney's consequent inability to act as an attorney after the effective date of the order, and shall advise such clients to seek legal advice elsewhere.

(b) *Notice to Clients in Litigated Matters.* An attorney ordered to be disbarred or suspended shall promptly notify, by registered or certified mail, return receipt requested, all clients involved in litigated matters or administrative proceedings in any court of the District of Columbia, or in pending matters before any District of Columbia government agency, of the order of disbarment or suspension and of the attorney's consequent inability to act as an attorney after the effective date of the order. The notice shall advise the prompt substitution of another attorney or attorneys. If the client fails to obtain substitute counsel before

---

3. Section 14(f), of Rule XI, "Effective Date of Discipline," provides in relevant part: "... an order of disbarment or suspension shall be effective thirty days after entry unless the Court directs otherwise."

the effective date of the order, the disbarred or suspended attorney shall move *pro se* in the court or agency in which the proceeding is pending for leave to withdraw.

(c) *Notice to Adverse Parties.* An attorney ordered to be disbarred or suspended shall promptly notify, by registered or certified mail, return receipt requested, the attorney or attorneys for every adverse party in litigated matters or administrative proceedings in any court of the District of Columbia, or in pending matters in any District of Columbia administrative agency, of the order of disbarment or suspension and of the attorney's consequent inability to act as an attorney after the effective date of the order. The notice shall state the mailing address of each client of the disbarred or suspended attorney who is a party in the pending matter or proceeding.

(d) *Delivery of Client Papers and Property.* An attorney ordered to be disbarred or suspended shall promptly deliver to all clients being represented in pending matters any papers or other property to which the clients are entitled, or shall notify the clients and any co-counsel of a suitable time when and place where the papers and other property may be obtained, calling attention to any urgency for obtaining the papers or other property."

The September 29, 1998 document fails the test of the Rule in numerous respects. We put to one side the fact that it was filed 26 days after the interim suspension Order became effective,[4] and we do not need to resolve the issue whether the document was timely served on Bar Counsel or filed with the Court as required by the Rule. (The Office of Bar Counsel asserts that it was first apprised of the existence of the affidavit when it was appended to Respondent's post-hearing brief filed October 18, 1999, and the certificate of service on the document recites mailing only to the Board.)

Much more significant are the substantive deficiencies in the September 29, 1998 AFFIDAVIT AND REGISTRATION STATEMENT. Specifically, the document fails to show or even assert compliance with any of the provisions of Rule XI, § 14(a)-(d).

These are all matters of substance. None of them is a mere technicality. They all go to assure the protection of clients in both non-litigated and litigated matters from any disadvantage resulting from the suspension of the attorney. They all assure the protection of adverse parties, so that their counsel may take appropriate steps after the suspension to safeguard their interests. They also serve the needs of the judicial and administrative systems by assuring that all interested persons—clients, adverse parties, and other attorneys—know of the suspension of the attorney, so that pending proceedings will not be unduly disrupted by the suspension.

Since the September 29, 1998 AFFIDAVIT AND REGISTRATION STATEMENT fails to give any assurance, other than in wholly conclusory terms—"I ... have fully complied with ... Rule XI ....."—that these provisions have been complied with, it falls far short of the standard of the rule requiring such a demonstration "with particularity, and with supporting proof."

---

4. Under Rule XI, § 10(c), interim suspensions based on conviction of a "serious crime" are effective immediately.

We attach no legal significance to the fact relied on by Respondent that Bar Counsel did not file a "Notice of Non Compliance" under Board Rule 9.9(b). We put to one side when Bar Counsel first learned of the September 29, 1998 AFFIDAVIT AND REGISTRATION STATEMENT; as indicated, the Office of Bar Counsel asserts that it was not informed of the existence of the affidavit until it was appended to Respondent's post-hearing brief filed October 18, 1999. Respondent was never in doubt as to the need to file a document complying with Rule XI, § 14. The suspension Order of September 4, 1998, so informed him; his own affidavit of February 24, 2000, recites that he was told by Mr. Frisch of the Office of Bar Counsel of the need to submit a § 14 affidavit prior to his assertedly mailing the AFFIDAVIT AND REGISTRATION STATEMENT of September 29, 1998 to Mr. Frisch on September 30, 1998; and Bar Counsel's submissions, beginning with its Proposed Findings of Fact, Conclusions of Law, and Recommendation as to Sanction, filed August 19, 1999, and continuing to the present time, have consistently taken the position that Respondent has not complied with the Rule. Respondent has not been misled or prejudiced by the fact that he did not receive such a "Notice of Non Compliance."

Moreover, Board Rule 9.9(b) is cast in permissive, not mandatory language. ("Bar Counsel *may file* with the Court and in the Board Office a Notice of Non Compliance....") (Emphasis supplied). We do not read the Board Rule as relieving a Respondent of the obligation to comply with Rule XI, § 14, because a Notice of Non Compliance is not filed. Neither we nor Bar Counsel have power to waive compliance with § 14. Only the Court could do so, and it has not done so here. It follows that the Office of Bar Counsel cannot be estopped from raising the issue of compliance with § 14, as it has done, nor the Board from considering it, as we have done.

## 2. The second AFFIDAVIT AND REGISTRATION STATEMENT.

We have closely examined Respondent's second AFFIDAVIT AND REGISTRATION STATEMENT, executed March 3, 2000, and filed March 17, 2000. We conclude that it has not cured the deficiencies in the first AFFIDAVIT AND REGISTRATION STATEMENT we have set out above.

It begins with the same conclusory recital that "I ... have fully complied with the provisions of ... Rule XI ..." that we have already determined to be insufficient to meet the Rule's requirement of a demonstration "with particularity, and with supporting proof." Every one of the succeeding recitals as to "notice to clients in non-litigated cases," "notice to clients in litigated cases," and "notice [to] adverse parties" is carefully qualified with the words "at this time" or is otherwise expressed in the present tense, *i.e.,* as of the date of the execution of the document, March 3, 2000.

This is plainly insufficient to comply with the Rule. The Rule requires that the notices be given to the specified persons who were clients or adverse parties or attorneys at the time of the suspension Order. A plain, common sense reading of the purpose of the Rule is to assure that no client of a suspended lawyer and no adverse party fails to receive the required notice, so as to be able to take steps to protect their interests. The second AFFIDAVIT AND REGISTRATION STATEMENT has a gaping hole. Since it speaks only as of the time of its execution, *i.e.,* March 3, 2000, it leaves open as a distinct possibility that there were persons falling into the categories specified by § 14 either on September 4, 1998, the date of the suspension Order, or between September

4, 1998, and March 3, 2000, the date of the execution of the second AFFIDAVIT AND REGISTRATION STATEMENT, who did not receive the notice required by the Rule. If this is not the case, it should be easy enough for Respondent to say so and show that it is so—either by affirming that there were no persons falling within the categories of the Rule between September 4, 1998, and March 3, 2000, to whom notice had to be given, or, if there were, that he has given such notice, citing chapter and verse and attaching relevant proof. *See* Board Rule 9.9(a) at 10 n. 4, *supra.* We are not setting an impossible or even difficult task before Respondent, who has the relevant knowledge and information on these matters.

We emphasize again that we are not being technical or nit-picking in our view of what the Rule requires. Suppose, for example, that an attorney was representing an incarcerated criminal defendant at the time of his suspension or undertook such a representation despite the suspension Order. It would be of the highest importance for such a client to know of the suspension, so as to seek other counsel. It would be of the highest importance to his adversary, the prosecution, to know, so that the successful presentation of the criminal case would not be jeopardized by the presence or participation of a suspended attorney. It would be of the highest importance to the judicial system to know, so as to take any necessary steps to protect the interests of both the client and the prosecution in such a situation.

We are not in any way suggesting that this is the situation in the present case. But we do not know and will not know, until Respondent files a proper affidavit filling in the gap as to September 4, 1998 and between September 4, 1998, and

March 3, 2000. We take him at his word that he is not "at this time," *i.e.*, March 3, 2000, representing anyone in the specified categories in Rule XI, § 14, and that no one else falls into these categories and therefore must be given the required notice. But he needs to provide the prescribed showing for the period which is not covered by his second AFFIDAVIT AND REGISTRATION STATEMENT. Until he does, Rule XI, § 14 will not be satisfied and his period of suspension will not begin to run.[5]

We believe that our decision on this issue and our interpretation of Rule XI, § 14 are in accord with the authorities in this jurisdiction. Respondent relies on *In re Gardner,* 650 A.2d 693, 697–98 (D.C. 1994), in which the Court granted *nunc pro tunc* treatment of a suspension to an attorney who had not filed a § 14 affidavit. The Court stated:

> "If a lawyer fails to file the section 14 affidavit, he is generally not eligible for reinstatement until a period of time equal to the period of suspension has elapsed following his compliance with section 14. D.C. Bar Rule XI, § 16(c). However, in this case, although respondent did not file a section 14 affidavit, he promptly provided the Board with written notice which the Board concluded informed it that respondent had no clients, adverse parties, or tribunals within the District to inform of his suspension."

*In re Gardner* is clearly distinguishable on several grounds. Respondent here, unlike Gardner, has not provided us with the written notice from which we can conclude that he has met the requirements of the Rule. *Gardner* was also a reciprocal discipline case, not an original matter as is the

5. We have expedited the issuance of this Report and Recommendation, so that Respondent may promptly provide the necessary supplementation of his prior submissions, permitting the period of any suspension ordered by the Court to commence at that time.

present case; the Court wanted to track the other state's discipline, and the respondent in *Gardner* had already resumed practice in the other state. Moreover, Gardner had the benefit of a favorable recommendation from the Board on the point, which carried weight with the Court. This Respondent does not, since we reject his position on the issue. In addition, the suspension Order of the Court in *Gardner*, unlike the Order in the present case, did not contain any explicit reference to § 14. *See* 650 A.2d at 697–98 and n. 7. Finally, the *nunc pro tunc* order in *Gardner* became effective only upon the filing of a sufficient Rule XI, § 14 affidavit by the respondent, which he had done by the time of the Court decision. 650 A.2d at 698 n. 8. This Respondent has not yet filed such an affidavit.

Our view of the Rule and the limitations of *Gardner* is confirmed by the Court's subsequent decision in *In re Slosberg,* 650 A.2d 1329 (D.C.1994). The Court took a strict view of the requirements of Rule XI, § 14. In holding an affidavit insufficient, the Court stated:

"On August 26, 1993, respondent Slosberg filed an affidavit which met the prescription of the Executive Attorney of the Board but did not include matters required by D.C. Bar R. XI, § 14(f) [now § 14(g) ]. Specifically, the affidavit failed to list all other state and federal jurisdictions and administrative agencies before which respondent was admitted to practice and, although it stated that he had not practiced law in the District of Columbia since his suspension in Maine on August 9, 1993, and would not do so during his Maine suspension, it did not state that he had given the required notice of his suspension to clients in non-litigated matters; nor did it state that he had sent such notice to clients and adverse parties involved in litigated matters pending before the courts or administrative agencies of the District of Co-

lumbia. If he had no clients to whom such notices should be sent, the affidavit failed to say that. Furthermore, the affidavit was not filed with this Court, as is required by § 14(f), in addition to the Board and Bar Counsel."

*Id.* at 1331–32.

The Court distinguished *In re Gardner* on several of the grounds set forth above, stating:

"We are aware that recently we have held that compliance with the requirements of § 14(f) that is less than technically perfect can suffice to start the running of a retroactive period of probation. *In re William E. Gardner,* 650 A.2d 693 (D.C.1994) (section 14(f) substantially complied with where upon suspension in D.C., respondent "promptly provided the Board with written notice which the Board concluded informed it that respondent had no clients, adverse parties, or tribunals within the District to inform of his suspension," although notification not in affidavit form and lacked information about other jurisdictions in which respondent admitted). Respondent Slosberg's August 1993 affidavit did not inform the Board or the court that he had no such clients, adverse parties, or tribunals within the District, nor did it supply information concerning other jurisdictions or administrative agencies before which he was admitted to practice, information which was "already known" in *Gardner.* 650 A.2d at 697, n. 7. Thus, Slosberg did not effect full, though technically imperfect, compliance with the requirements of section 14(f), as did Gardner. In addition, the court noted in *Gardner* that "contrary to present practice, the order of this court suspending respondent pursuant to D.C. Bar R. XI § 11(d) did not contain any explicit reference to section 14." 650 A.2d at 697, n. 7. Slosberg had the benefit of that

notice. Accordingly, we hold that respondent should be deemed to have commenced service of his three-month period of suspension on August 24, 1994, rather than on August 13, 1993."

*Id.* at 1333.

The present case is much closer to *Slosberg* than it is to *Gardner.* Our decision on this issue is consistent with both cases, but it is controlled by the decision in *Slosberg.* *See also In re Reynolds,* 707 A.2d 791 (D.C.1998); *In re Cornish,* 691 A.2d 156 (D.C.1997); *In re Eberhart,* 678 A.2d 1023 (D.C.1996).

### CONCLUSION

We recommend that Respondent be suspended for a period of one year, without a requirement of fitness. The suspension period should begin to run from the date on which Respondent complies with the affidavit requirements of Rule XI, § 14(g).

BOARD ON PROFESSIONAL RESPONSIBILITY

By:

Daniel A. Rezneck

Dated: June 19, 2000

All members of the Board concur in this Report and Recommendation.