*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-BG-1459

IN RE DANA W. JOHNSON, PETITIONER.

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 420592)
(BDN 295-12)

(Argued September 23, 2014          Decided November 13, 2014)

*Dana W. Johnson*, pro se.

*Julia L. Porter*, Senior Assistant Bar Counsel, with whom *Wallace E. Shipp, Jr.*, Bar Counsel and *Jennifer Lyman*, Senior Assistant Bar Counsel, were on the brief for the Office of Bar Counsel.

Before GLICKMAN and BECKWITH, *Associate Judges*, and KING, *Senior Judge*.

KING, *Senior Judge*: This case presents the question of whether Mr. Johnson, a disbarred attorney petitioning for reinstatement, has complied with the requirement that he notify all clients of his discipline, and file an affidavit demonstrating that compliance. We conclude that he has not, and uphold the dismissal of his petition.

After the Maryland Court of Appeals disbarred petitioner Dana Johnson for

conduct violating the Maryland Rules of Professional Conduct,[1] this court imposed reciprocal discipline disbarring Mr. Johnson from the practice of law in the District of Columbia on November 27, 2002.[2]   In that opinion, we stated that since "[Mr. Johnson] has not filed the affidavit required by D.C. Bar R. XI, § 14 (g), we direct his attention to the requirements of that rule and their effect on his eligibility for reinstatement." *In re Johnson*, 810 A.2d 917, 917 (D.C. 2002).   No "mere technicality," the affidavit required by D.C. Bar R. XI, § 14 (g) ("§ 14 (g)") is intended to "assure the protection of clients in both non-litigated and litigated matters from any disadvantage resulting from the suspension of the attorney." *In re Bowser*, 771 A.2d 1002, 1010 (D.C. 2001).   One of the "core requirements" of the § 14 (g) affidavit is "notice to clients." *In re Hook*, 912 A.2d 554, 555 (D.C. 2006).   Because we find that Mr. Johnson has still failed to file a § 14 (g) affidavit "[d]emonstrating with particularity . . . that he has complied" with those requirements, he is not eligible for reinstatement.   D.C. Bar R. XI, § 14 (g); D.C. Bar R. XI, § 16 (c).

---

[1] *Attorney Grievance Comm'n of Maryland v. Johnson*, 363 Md. 598, 770 A.2d 130 (2001).

[2] *In re Johnson*, 810 A.2d 917 (D.C. 2002) ("Among other things, Johnson filed a bankruptcy petition without the knowledge or consent of his putative clients, forging signatures and fabricating information in the process, in order to forestall a mortgage foreclosure on property he had contracted to purchase.")

## Factual Summary

Over the course of this litigation, Mr. Johnson has filed four affidavits seeking to satisfy the requirements of D.C. Bar R. XI § 14 (g). Two were filed in 2001, while the original D.C. bar discipline case was pending. In the first affidavit, Mr. Johnson says that he is "admitted to practice in the District of Columbia and the Commonwealth of Virginia." He then states: "I am currently representing an individual in arbitration under the rules of the American Arbitration Association (AAA). . . . [U]nder the rules of the AAA one need not be an attorney to undertake such representations." After Bar Counsel asserted that the first affidavit did not satisfy the requirements of § 14 (g), Mr. Johnson filed a second affidavit stating that he was admitted to practice in D.C., Virginia, and several related federal courts, and that he was "currently prosecuting no legal matters on behalf of clients in any jurisdictions." The Board on Professional Responsibility, in recommending Mr. Johnson's disbarment, found that neither affidavit complied with § 14 (g). Mr. Johnson filed exceptions to the Board's report and recommendation, but did not file a brief in this court, "despite repeated orders of this court." *In re Johnson*, 810 A.2d 917, 917 n.1 (D.C. 2002). We disbarred Mr. Johnson on November 27, 2002, confirming that Mr. Johnson had not filed an affidavit satisfying the requirements of

§ 14 (g), and directing Mr. Johnson's attention to "the requirements of [Rule XI § 14 (g)] and their effect on his eligibility for reinstatement." *Id.* at 917. Following his disbarment, Mr. Johnson did not file another § 14 (g) affidavit until December 14, 2012, more than ten years later.

Mr. Johnson petitioned for reinstatement on August 13, 2012. After the Board on Professional Responsibility dismissed his petition due to failure to file a compliant § 14 (g) affidavit, Mr. Johnson filed a third affidavit, stating "I fully complied with the provisions of my suspension order and D.C. Bar R. XI, section 14(g); . . . now and at the time of my suspension I had no clients [and] thus [no] reason to satisfy the notice and delivery requirement of section 14." Bar Counsel sent a letter to Mr. Johnson on December 28, 2012, explaining that this latest affidavit still failed to explain "the uncertain nature of [Mr. Johnson's] relationship with the individual in the arbitration proceeding," and contained "discrepancies . . . about the courts in which [Mr. Johnson was] admitted to practice," providing a copy of this letter to the court in a Notice of Non-Compliance.

On June 1, 2013, the Board denied Mr. Johnson's motion to reconsider the dismissal. The Board declined to grant Mr. Johnson's request to refer the matter to a Hearing Committee pursuant to internal Board Rule 9.9 (c), stating that "it may be

possible to resolve these issues on the papers of the parties by supplementing the documentary record, without referral to a Hearing Committee." The Board then directed Mr. Johnson to file a supplemental § 14 (g) affidavit with very specific instructions:

> Petitioner is thus directed to file a supplemental affidavit identifying the parties he represented in the AAA proceeding at the time of the Court's order of suspension, the basis on which he was retained, *i.e.* whether he held himself out as a lawyer when retained or during the course of the representation and, if not, in what capacity he was acting. If Petitioner is unable to recall that person's name, Petitioner should explain in detail the steps he has taken to identify that individual. In addition, the supplemental affidavit should list all of Petitioner's bar memberships at the time of the Court's order of suspension, his current status in each, including the four federal courts listed in his July 2001 affidavit, and, if he was disbarred or suspended, the dates, or the approximate dates if he doesn't have records, on which he was sanctioned.

Mr. Johnson responded in his fourth and final affidavit by stating:

> I did not retain any records from that period almost 15 years ago when I participated in an arbitration, I attempted to recall the name of the person I represented in the capacity of his representative in arbitration and not that of an attorney. [sic] As his name was derived from one of the many languages not native to me spoken on the Iberian Peninsula, I was unsuccessful in recalling it.
>
> Furthermore, my recollection is that at the time of my order of suspension I was admitted in the Commonwealth of Virginia and the U.S. District Courts for the District of Columbia and the Eastern District of Virginia. As I have

> personal knowledge that at the time of my suspension proceedings before the Board, Bar Counsel's office in direct communication with its counterpart in the Commonwealth of Virginia and Maryland, it is fully aware now, as then, that I was sanctioned contemporaneously by the Board and the identified bars.

On December 20, 2013, the Board on Professional Responsibility, finding that "[t]o the extent factual issues remain, they are the result of Petitioner's repeated failure to supply the information requested by the Board and required under § 14 (g)," recommended that we enter an order finding that Mr. Johnson had failed to comply with § 14 (g), and that his disbarment should be deemed to run for reinstatement purposes from the date that he files a fully compliant affidavit.

## Standard of Review

We accept "findings of fact made by the Board unless they are unsupported by substantial evidence of record." D.C. Bar R. XI, § 9 (h)(1). Legal conclusions and findings of ultimate fact – such as whether an affidavit complies with the requirements of § 14 (g) – we review *de novo*. *See In re Fair*, 780 A.2d 1106, 1110-11 (D.C. 2001).

**Analysis**

Under the rules governing the District of Columbia Bar, "disbarred or suspended" attorneys must "promptly notify" clients in both litigated and non-litigated matters "of the order of disbarment or suspension and of the attorney's consequent inability to act as an attorney after the effective date of the order." D.C. Bar R. XI, § 14. The attorney must also file an affidavit "(1) [d]emonstrating with particularity, and with supporting proof, that the attorney has fully complied with the provisions of the order and with this rule; (2) [l]isting all other state and federal jurisdictions and administrative agencies to which the attorney is admitted to practice; and (3) [c]ertifying that a copy of the affidavit has been served on Bar Counsel." D.C. Bar R. XI, § 14 (g). To ensure compliance, "[t]he Board may require such additional proof as it deems necessary." *Id.*

As the rule makes clear, "notice to clients" is one of the "core requirements" of the § 14 (g) affidavit. *In re Hook*, 912 A.2d 554, 555 (D.C. 2006). The requirement is not a "mere technicality," but is intended to "assure the protection of clients in both non-litigated and litigated matters from any disadvantage resulting from the suspension of the attorney," by ensuring that an attorney's clients are notified that he or she can no longer practice law. *In re Bowser*, 771 A.2d 1002, 1010 (D.C. 2001).

In his first § 14 (g) affidavit, Mr. Johnson stated: "I am currently representing an individual in arbitration," and that "under the rules of the AAA one need not be an attorney to undertake such representations." Assuming that Mr. Johnson was correct in stating that the AAA rules did not require representatives to be attorneys, the affidavit still raises two questions: (1) was Mr. Johnson's arbitration client, under the circumstances, a D.C. Bar R. XI § 14 "client" entitled to notice of Mr. Johnson's suspension and subsequent disbarment, and (2) if notice was required, did Mr. Johnson provide it?

None of Mr. Johnson's subsequent affidavits answers these questions. In his second 2001 affidavit, Mr. Johnson offered the conclusory statement that he was "currently prosecuting no legal matters on behalf of clients in any jurisdictions." Though later remedied, the statement also fails to address whether Mr. Johnson had clients requiring notice at the time of his suspension. *In re Maignan*, 988 A.2d 493, 496 (D.C. 2010). Despite the warning in his disbarment order, Mr. Johnson did not file another § 14 (g) affidavit until December 14, 2012, more than ten years later. This affidavit stated, again in conclusory fashion, that "now and at the time of my suspension I had no clients [and] thus [no] reason to satisfy the notice and delivery requirement of section 14." In 2013, the Board gave Mr. Johnson specific

instructions, directing him to identify his client, "the basis on which he was retained, *i.e.* whether he held himself out as a lawyer when retained or during the course of the representation and, if not, in what capacity he was acting" and "the steps he has taken to identify that individual" if he could not recall the client's name. Mr. Johnson's response was simply to claim that he had no records, that he "was unsuccessful in recalling" the client's name, and that as the client's representative, he was not acting "in the capacity . . . of an attorney." This is a far cry from "[d]emonstrating with particularity, and with supporting proof, that the attorney has fully complied with the provisions of the order and with this rule." D.C. Bar R. XI § 14 (g).

Even if we choose to disregard the issues surrounding the jurisdictions that Mr. Johnson's affidavits have listed, which raise more questions about his thoroughness than his honesty, the inadequacy of Mr. Johnson's compliance with § 14 (g) is clear. Repeated refusal to clarify the circumstances surrounding his arbitration client leaves this court with no choice but to conclude that § 14 (g) has not been satisfied.

It would appear that various avenues are potentially available for compliance. For instance, instead of relying on his inability to recall the arbitration client's name,

Mr. Johnson could have sought to contact the person representing the opposing party in the arbitration proceeding, or the party directly, if there was no representative. Further, Mr. Johnson could have discussed the matter with contemporaries to jog his memory, or if there were no contemporaries who could supply the information, he should have stated that fact. Even if the name ultimately eluded him, Mr. Johnson could have provided substantive information about the relationship. Since he claims that he was not acting in the capacity of an attorney, Mr. Johnson could have detailed the capacity in which he represented the client, the basis on which he was hired, and the relevance of his status as an attorney in the circumstances.

Instead of "[d]emonstrating with particularity . . . that [Mr. Johnson] has fully complied," Mr. Johnson's affidavits provide no basis for determining whether Mr. Johnson ever complied with the notice requirement of § 14. *See* D.C. Bar R. XI § 14 (g). The court is left in the dark on that question, and with some doubts about whether Mr. Johnson in fact notified a client who was entitled to notice of his discipline under § 14. However, the accuracy of that suspicion is not relevant to the dispositive issue here. Regardless of his actual compliance with §14 (a-f), Mr. Johnson has failed to submit an affidavit that provides the thorough demonstration of compliance required by § 14 (g).

Finally, Mr. Johnson claims that under Board Rule 9.9 (c), he is entitled to an evidentiary hearing to resolve disputed factual issues regarding his compliance with § 14 (g).[3] However, there are no disputed factual issues involving that issue. No one disputes that Mr. Johnson submitted four affidavits seeking to comply with § 14 (g). On those undisputed facts, we conclude that those affidavits fail to "[d]emonstrat[e] with particularity, and with supporting proof, that the attorney has fully complied with the provisions of the order and with this rule." D.C. Bar R. XI § 14 (g). To be sure, factual questions remain: what were the circumstances surrounding Mr. Johnson's representation of the arbitration client? If notice was required under the circumstances, was the client notified of Mr. Johnson's suspension and disbarment? However, these are questions that § 14 (g) requires Mr. Johnson, not a Hearing Committee, to answer, and he has thus far failed to do so. If Mr. Johnson demonstrated with particularity and supporting proof that the circumstances of his arbitration case created potentially dispositive factual disputes between Mr. Johnson and Bar Counsel about the necessity of notice under § 14,[4]

---

[3] Board Rule 9.9 (c) provides that "specified objections to a Notice of Non Compliance . . . will be decided by the Board on the papers of the parties unless the Board determines that there are disputed issues of fact and therefore enters an order referring such issues to a Hearing Committee for an evidentiary hearing and report to the Board." *In re Bowser*, 771 A.2d 1002, 1006 n.2 (D.C. 2001).

[4] As the Board told Mr. Johnson, "the basis on which he was retained, *i.e.*, whether he held himself out as a lawyer," and "[i]f Petitioner is unable to recall [the

(continued . . .)

that could be an appropriate case for the Board to refer to a Hearing Committee. But as the Board correctly reasoned, an evidentiary hearing is not required when the attorney has simply not provided the information required by § 14 (g).

If Mr. Johnson ever files an affidavit that satisfies the requirements of § 14 (g), that could trigger an analysis of his request for *nunc pro tunc* treatment. *See In re Weekes*, 990 A.2d 470, 473-75 (D.C. 2010) (discussing *In re Slosberg*, 650 A.2d 1329 (D.C. 1994); *In re William E. Gardner*; 650 A.2d 693 (D.C. 1994); and *In re Susman*, 876 A.2d 637 (D.C. 2005)). Until he does so, analysis of that question would be dicta.

D.C. Bar R. XI § 14 is intended to protect the clients, adverse parties and tribunals affected by the suspension or disbarment of attorneys by requiring that the attorney inform them of his or her discipline. Under § 14 (g), the attorney bears the burden of demonstrating compliance with that rule. D.C. Bar R. XI § 14 (g). The penalty for non-compliance is found in § 16 (c): "a disbarred attorney shall not be eligible for reinstatement until five years shall have elapsed following the attorney's

_____

(…continued)
client's] name . . . the [detailed] steps he has taken to identify that individual" might all be relevant to this determination. But Mr. Johnson must first go to the effort of demonstrating compliance "with particularity, and with supporting proof" – an endeavor he has not undertaken. D.C. Bar R. XI § 14 (g).

compliance with section 14."   D.C. Bar R. XI § 16 (c).   Accordingly, it is

ORDERED that Mr. Johnson's affidavits, as supplemented and explained, fail to comply with § 14 (g).   Mr. Johnson is thus not eligible for reinstatement, and his petition was appropriately dismissed.

*So ordered.*