*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-BG-1218

IN RE DANA JOHNSON, PETITIONER.

FILED 7/28/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

On Report and Recommendation of the
Board on Professional Responsibility
(BDN-39-15)

(Argued April 14, 2016                                    Decided July 28, 2016)

Dana W. Johnson, *pro se*.

*Julia L. Porter*, Senior Assistant Disciplinary Counsel, with whom *Wallace E. Shipp, Jr.*, Disciplinary Counsel, and *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, were on the brief, for the Office of Disciplinary Counsel.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and REID, *Senior Judge*.

PER CURIAM: *Pro se* petitioner Dana W. Johnson was disbarred in 2002, *In re Johnson* (*Johnson I*), 810 A.2d 917 (D.C. 2002) (per curiam), and this court denied his first petition for reinstatement in 2014, *In re Johnson* (*Johnson II*), 103 A.3d 194 (D.C. 2014). Mr. Johnson brought this second petition for reinstatement before the Board on Professional Responsibility ("the Board") after multiple failed attempts to file a compliant affidavit with the Board pursuant to D.C. Bar R. XI,

§ 14 (g).[1] Mr. Johnson asserted that his last two affidavits filed in March 2015 and August 2015 were "collectively compliant" and requested that his affidavits receive *nunc pro tunc* treatment dating back to May 2001 when he filed his first affidavit, which would allow his requisite five year period of disbarment[2] to run from that date. The Board found that the last two affidavits were still not compliant, refused to entertain any further affidavits submitted for the purpose of receiving *nunc pro tunc* treatment, and submitted its recommendation to this court to dismiss Mr. Johnson's second petition for reinstatement. We adopt the recommendation of the Board.

---

[1] D.C. Bar Rule XI, § 14 (g) states in pertinent part:

> Within ten days after the effective date of an order of disbarment or suspension, the disbarred or suspended attorney shall file with the Court and the Board an affidavit:
>
> (1) Demonstrating with particularity, and with supporting proof, that the attorney has fully complied with the provisions of the order and with this rule;
>
> (2) Listing all other state and federal jurisdictions and administrative agencies to which the attorney is admitted to practice; and
>
> (3) Certifying that a copy of the affidavit has been served on Disciplinary Counsel.

[2] D.C. Bar R. XI, § 16 (c) states that "a disbarred attorney shall not be eligible for reinstatement until five years shall have elapsed following the attorney's compliance with section 14."

## I.     Factual Background

This is Mr. Johnson's second petition for reinstatement.  In brief, the Maryland Court of Appeals disbarred Mr. Johnson in April 2001,[3] and this court imposed reciprocal discipline and disbarred him in the District of Columbia in November 2002.[4]  *Johnson I, supra*, 810 A.2d at 917.  Over the course of approximately fifteen years, Mr. Johnson made eight attempts to comply with D.C. Bar R. XI, § 14 (g), which requires an attorney, within ten days after the date of disbarment, to file an affidavit that, *inter alia*, demonstrates that he has fully complied with the "core requirements"[5] of D.C. Bar R. XI, § 14 (a)-(d). Specifically relevant to this case, the core requirement found in 14 (a) mandates

---

[3]  Mr. Johnson was disbarred for operating a law office in Maryland without a Maryland license, falsely claiming to represent two clients who did not retain him, subsequently forging those clients' signatures to a bankruptcy petition, and filing it without their knowledge, all in violation of the Maryland Rules of Professional Conduct 1.7 (b), 3.3 (a)(1), 5.5 (a), 7.1, 7.5 (a) and (b), and 8.4 (a), (c), and (d).  *See Attorney Grievance Comm'n of Md. v. Johnson*, 770 A.2d 130, 150 (Md. 2001).

[4]  The underlying facts are discussed in greater detail in *Attorney Grievance Comm'n of Md., supra* note 3, 770 A.2d at 134-37, and *Johnson II, supra*, 103 A.3d at 195-97.

[5]  *See In re Weekes,* 990 A.2d 470, 474 (D.C. 2010).

that an attorney who is disbarred notify all clients in any pending matters of his disbarment and advise such clients to seek legal advice elsewhere. In addition to verifying compliance with the "core requirements" of 14 (a) through (d), a disbarred attorney must list in the 14 (g) affidavit all other state and federal jurisdictions to which the attorney is admitted to practice. *See* D.C. Bar R. XI, § 14 (g)(2).

In November 2014, this court dismissed Mr. Johnson's first petition for reinstatement because his first five 14 (g) affidavits were noncompliant for failing to demonstrate that he fully satisfied the 14 (a) core requirement to notify clients of his disbarment. *See Johnson II, supra*, 103 A.3d at 199. Specifically, he did not provide proof that he gave notice to an individual whom he represented in a 2001 arbitration proceeding, claiming that he did not have records of the representation and could not recall the individual's name from memory. *Id.* at 195-97. On January 29, 2015, Mr. Johnson filed a second petition for reinstatement with the Board, along with a sixth 14 (g) affidavit. The sixth affidavit failed to correct the deficiencies of the previous five affidavits. Mr. Johnson then filed a seventh 14 (g) affidavit on March 4, 2015, in which he claimed that he was still unable to recall the individual's name from the 2001 arbitration. But, he asserted that the

individual was aware of his disbarment and still opted to have Mr. Johnson represent him in the arbitration in a non-legal capacity.

On August 5, 2015, the Board issued an order dismissing Mr. Johnson's second petition. The Board concluded that Mr. Johnson satisfied the notice requirement in 14 (a) "to the extent he [was] able to do so" because he was unable to name the individual from the 2001 arbitration, and that was "unlikely to change." To demonstrate full compliance with 14 (g), however, the Board required Mr. Johnson to correct a false statement in his March 2015 affidavit. Specifically, in response to 14 (g)(2), which requires a disbarred attorney to list "all other state and federal jurisdictions to which [he] is admitted to practice," Mr. Johnson included the following statement:

> At the time of entry of the order of suspension, the complete list of the state and federal jurisdictions and administrative agencies to which I was admitted to is: 1) the U.S. District Courts for the District of Columbia and the Eastern District of Virginia. *I am still admitted to those jurisdictions.* 2) I was admitted to the bar of the Commonwealth of Virginia but my license to practice there was revoked in approximately 2002 and is still revoked.

This statement was false. Mr. Johnson was not admitted to practice in the United States District Court for the District of Columbia because he was disbarred by that federal court in August 2002. Mr. Johnson argued to the Board that he

never received the order of disbarment because he was forced to foreclose his home and had no fixed address following his disbarment. However, Mr. Johnson should have known, pursuant to the Local Civil Rules of the United States District Court for the District of Columbia, that he would be automatically suspended and ordinarily disbarred by that federal court upon being disbarred by this court in 2002. *See* D.D.C. Local Rule 83.16 (c)(1), (4).

The assertion that he was admitted to practice in the United States District Court for the Eastern District of Virginia was also false. Mr. Johnson's license to practice in the Commonwealth of Virginia was revoked on June 18, 2001, which likewise made him ineligible to practice in the United States District Court for the Eastern District of Virginia. *See* E.D. Va. Local Civil Rule 83.1 (A). Mr. Johnson was still listed on the United States District Court for the Eastern District of Virginia's membership list at the time he filed his March 2015 affidavit only because he failed to report the revocation of his Virginia license to that federal district court. Indeed, on March 30, 2015, the Clerk's Office in the United States District Court for the Eastern District of Virginia removed Mr. Johnson from its membership list upon learning of his revoked Virginia license from the District of Columbia's Disciplinary Counsel. The Board stated that, should Mr. Johnson

correct the false statement about his bar membership or explain why that statement was true, his affidavit would receive *nunc pro tunc* treatment to March 4, 2015.

On August 18, 2015, Mr. Johnson filed a supplemental affidavit claiming that the statements about his bar memberships in his March 2015 affidavit were true "to the best of his knowledge and belief." He did not address the August 2002 order of disbarment from the United States District Court for the District of Columbia in the affidavit, nor did he respond to the fact that the June 2001 revocation of his license in the Commonwealth of Virginia made him ineligible to practice in the United States District Court for the Eastern District of Virginia. Instead, he continued to assert that he had membership in both federal district courts, which he claimed he confirmed "by telephoning and receiving a verbal confirmation from [each] respective clerk's office earlier [that] year, prior to filing his March 4, 2015, [a]ffidavit."

On October 29, 2015, the Board issued a supplement to its August 5, 2015, order refusing to accept Mr. Johnson's August 18, 2015, supplemental affidavit because, even if he "relied in good faith on the 'verbal confirmation' of his bar memberships by the [respective] federal court clerks['] [offices] when he prepared his March [2015] affidavit," he should have corrected the false statement in his

August 2015 affidavit, after Disciplinary Counsel "supplied evidence that [he] was either disbarred or ineligible to practice before those courts." Finding that no further opportunity to correct was in order, the Board stated that Mr. Johnson was "not entitled to have the time of his disbarment run, *nunc pro tunc*, to the date of his March 4, 2015 affidavit" and refused "to entertain further attempts by [Mr. Johnson] to supplement his [14 (g)] affidavit in order to obtain *nunc pro tunc* treatment of his period of disbarment." Mr. Johnson filed exceptions to the Board's August 5, 2015, and October 29, 2015, orders in this court, arguing that his affidavits were collectively compliant and requesting *nunc pro tunc* treatment back to May 18, 2001, the date of his first affidavit.

## II. Analysis

We review bar disciplinary recommendations from the Board, such as whether to permit *nunc pro tunc* treatment of an attorney's period of disbarment, with great deference and will adopt a recommendation "unless [it] is unwarranted or inconsistent with sanctions for comparable conduct." *In re Hallal*, 944 A.2d 1085, 1087 (D.C. 2008) (awarding *nunc pro tunc* treatment to an attorney's date of disbarment despite filing a late 14 (g) affidavit). This court accepts "findings of fact made by the Board unless they are unsupported by substantial evidence of

record." D.C. Bar R. XI, § 9 (h)(1). However, we review *de novo* legal conclusions, such as whether a 14 (g) affidavit is compliant. *See Johnson II, supra*, 103 A.3d at 197. "[A]lthough we place great weight on the recommendations of the Board . . . , this court has the ultimate authority to decide whether to grant a petition for reinstatement." *In re Sabo*, 49 A.3d 1219, 1224 (D.C. 2012) (internal quotations and citation omitted).

An attorney who has been disbarred in this jurisdiction "shall not resume the practice of law until reinstated by order of [this] Court" and "may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment." D.C. Bar R. XI, § 16 (a). To be eligible for reinstatement, a disbarred attorney must, among other things, submit a compliant 14 (g) affidavit within 10 days of the date of disbarment, demonstrating that he has fully complied with the "core requirements" of 14 (a) through (d). In the event a lawyer fails to file a compliant 14 (g) affidavit, "he is generally not eligible for reinstatement until [the five year period of disbarment] has elapsed following his compliance with" 14 (g). *In re Gardner*, 650 A.2d 693, 697 (D.C. 1994); *see also* D.C. Bar R. XI, § 16 (c).

In certain "exceptional circumstances," however, this court has allowed for "full, though technically imperfect compliance with the [14 (g)] affidavit

requirement." *In re Weekes, supra* note 5, 990 A.2d at 474 (citation and internal quotation marks omitted). For example, in *In re Gardner*, the respondent did not file a 14 (g) affidavit but "promptly provided the Board with written notice," which contained "key elements relative to the [14 (g)] affidavit . . . ." 650 A.2d at 697. In *In re Susman*, the respondent's initial 14 (g) affidavit was non-compliant, but he was not notified of its deficiency until nearly three years after its submission, and, upon notice, he promptly corrected the deficiencies. 876 A.2d 637, 638 (D.C. 2005). Under those circumstances, this court awarded *nunc pro tunc* treatment, allowing the petitioner's five year disbarment period to run from the date of the originally filed deficient affidavit. *Id.*

However, no such exceptional circumstances exist here. We conclude that Mr. Johnson's March 2015 and August 2015 affidavits were noncompliant. We therefore adopt the Board's recommendation to deny Mr. Johnson's petition for reinstatement and to decline to award his affidavits *nunc pro tunc* treatment to the date of any previously filed affidavits.

## A. Noncompliance of March 2015 and August 2015 Affidavits

Mr. Johnson argues that his March 2015 and August 2015 affidavits were "collectively compliant" with 14 (g). He asserts that he explained in his August 2015 affidavit that the statement regarding his bar membership was true because he confirmed via telephone that he was admitted to practice in the United States District Court for the District of Columbia and United States District Court for the Eastern District of Virginia at the time he filed the March 2015 affidavit. Yet, the statement regarding his bar memberships was false because the order of disbarment from the United States District Court for the District of Columbia indicates that Mr. Johnson has not been admitted to practice in that jurisdiction since August 2002. Moreover, notwithstanding the alleged verbal confirmation from the Clerk's Office in the United States District Court for the District of Columbia, Mr. Johnson should have known that, upon being disbarred by this court in 2002, he would "be automatically suspended from practice in" the United States District Court for the District of Columbia, and subsequently, the federal court would impose "identical discipline" if it deemed it appropriate. *See* D.D.C. Local Rule 83.16 (c)(1), (4).

Further, Mr. Johnson was not eligible to practice in the United States District Court for the Eastern District of Virginia at the time he filed his March 2015 affidavit. "Any person who is an [a]ctive [m]ember of the Virginia State Bar in good standing is eligible to practice before [the United States District Court for the

Eastern District of Virginia] upon admission." *See* E.D. Va. Local Civil Rule 83.1

(A).[6]  Mr. Johnson was no longer a member of the Virginia State Bar "in good

standing" because his Virginia license was revoked on June 18, 2001.  The Federal

Rules of Disciplinary Enforcement required Mr. Johnson to "promptly inform the

Clerk of [the] Court" for the United States District Court for the Eastern District of

Virginia "upon being subjected to public discipline . . . by a [c]ourt of any state

. . . ," and required the Eastern District of Virginia to subsequently "impose the

identical discipline."[7] *See* E.D. Va. Local Civil Rule, App. B; FRDE II.A, II.D.

Mr. Johnson failed to report his revoked Virginia license.  As a result, the Eastern

District of Virginia was unaware of his Virginia disbarment until the District of

Columbia's Disciplinary Counsel notified them on March 30, 2015.

Although Mr. Johnson's name was still on the membership list of attorneys

licensed to practice in the Eastern District of Virginia at the time he filed his March

2015 affidavit, placement on a membership list does not itself determine an

---

[6]  At the time of Mr. Johnson's disbarment, the rules stated that "[a]ny person who is a member of the bar in good standing in the Supreme Court of Virginia is eligible to practice before this Court upon admission." *See* E.D. Va. Local Civil Rule 83.1 (A) (2001).

[7]  Reciprocal discipline will be imposed barring any evidence that such an outcome would be inappropriate.  *See* E.D. Va. Local Civil Rule, App. B; FRDE II.A, II.D.

attorney's eligibility to practice law in a jurisdiction. In contrast, the rules for the Eastern District of Virginia indicate that eligibility to practice depends on an attorney's status as a "member of the Virginia State Bar in good standing," and Mr. Johnson was no longer "in good standing" once his Virginia license was revoked. Mr. Johnson cannot use his failure to comply with the reporting requirement as a basis for claiming continued bar membership in his March 2015 affidavit, particularly since he was required to notify the United States District Court for the Eastern District of Virginia of his revoked license prior to March 4, 2015. Accordingly, we conclude that Mr. Johnson's last two affidavits are noncompliant because the statement in his March 2015 affidavit that he was "still admitted to those jurisdictions" was false, and he did not correct the statement in his August 2015 affidavit, as requested.

Mr. Johnson makes an additional argument that the Board never filed a Notice of Non-Compliance during his second petition for reinstatement, which precluded him from seeking a hearing before the Board to determine the validity of Disciplinary Counsel's objections to his affidavit. However, a disbarred attorney "is not relieved of the obligation to comply fully with [14 (g)] by [Disciplinary] Counsel's failure to file" a Notice of Non-Compliance, *In re Bowser*, 771 A.2d 1002, 1003 (D.C. 2001), and "an evidentiary hearing is not required when the

attorney has simply not provided the information required by [] 14 (g)," *Johnson II, supra*, 103 A.3d at 199.

**B.** *Nunc Pro Tunc* **Treatment of Mr. Johnson's Future 14 (g) Affidavit**

A disbarred attorney will typically not be reinstated to practice in this jurisdiction until five years have passed from the date that the attorney submits a compliant 14 (g) affidavit. *See In re Gardner, supra*, 650 A.2d at 697; *see also* D.C. Bar R. XI, § 16 (c). In certain "exceptional circumstances," however, where an attorney files a deficient 14 (g) affidavit but promptly corrects any errors, we will allow the five year period of disbarment to run *nunc pro tunc* from the filing date of a previous deficient affidavit. *See In re Weekes, supra* note 5, 990 A.2d at 474. Mr. Johnson requested that his March 2015 and August 2015 affidavits receive *nunc pro tunc* treatment dating back to May 18, 2001, when he filed his first 14 (g) affidavit. The Board considered granting *nunc pro tunc* treatment to March 4, 2015, the date of his seventh affidavit, but after Mr. Johnson submitted an eighth noncompliant affidavit, the Board declined to "entertain [any] further attempts by [Mr. Johnson] to supplement his [14 (g)] affidavit in order to obtain *nunc pro tunc* treatment of his period of disbarment."

In determining whether to award *nunc pro tunc* treatment to a disbarred attorney's 14 (g) affidavit, this court must balance the public policy of D.C. Bar R. XI, § 14 to protect the public interest with the interest of fairness to the petitioner. In *In re Weekes*, we adopted the following three "*Susman* factors" set forth by the Board as a guide in determining whether *nunc pro tunc* treatment is appropriate:

> 1.  Did the omission or defect go to one of the core requirements listed in D.C. Bar R. XI, § 14 (a) through (d)?   If so, was there actual compliance with these requirements which was simply not adequately reported in the affidavit?
>
> 2.  Does respondent's conduct, both in the underlying violation and in the disciplinary proceeding, suggest that an opportunity to correct is in order?
>
> 3.   Does fairness to the respondent suggest that an opportunity to correct is in order?  If so, would *nunc pro tunc* treatment adequately protect the public interest?

990 A.2d at 474 (discussing the three factors that the Board in *In re Susman, supra*, 876 A.2d at 637 considered when recommending *nunc pro tunc* treatment).

Under the first *Susman* factor, this court must consider whether the defect in the previous 14 (g) affidavits relate to the "core requirements" listed in D.C. Bar R. XI, § 14 (a)-(d).  *Id.*  The 14 (a) through (d) "core requirements" mandate that a disbarred attorney notify all clients and adverse parties of his disbarment and deliver property to clients.  A 14 (g) affidavit must "[d]emonstrat[e] with

particularity, and with supporting proof, that the attorney has fully complied with" 14 (a) through (d). Here, the record reflects that Mr. Johnson never submitted a 14 (g) affidavit demonstrating that he complied with the 14 (a) core requirement to notify clients. Instead, the Board excused him from that requirement after he failed over a period of fifteen years to name the individual he represented in a 2001 arbitration proceeding or to sufficiently explain the nature of the representation. After six attempts to obtain a compliant affidavit on this issue, the Board acquiesced to the reality that due to the passage of time, compliance was impractical. As a result, we do not know, even now, whether "there [was] actual compliance with [14 (a)] which was simply not adequately reported in the affidavit." *Id.* Therefore, this factor weighs against Mr. Johnson.

Regarding the second *Susman* factor, we must examine whether Mr. Johnson's "conduct, both in the underlying violation and in the disciplinary proceeding, suggest that an opportunity to correct is in order." *Id.* In the underlying violation that led to his disbarment, Mr. Johnson engaged in conduct that was dishonest, fraudulent, and deceitful. He falsely claimed to represent clients while entering into a bankruptcy settlement on their behalf and forged their signatures on official documents. *See Attorney Grievance Comm'n of Md., supra*, 770 A.2d at 134-37. Further, he showed disregard for the disciplinary process

during his first petition for reinstatement when he submitted four noncompliant 14 (g) affidavits by "refus[ing] to clarify the circumstances surrounding his arbitration client" and subsequently refusing to follow steps that the Board laid out for him to correct this error. *See Johnson II*, 103 A.3d at 198; *id*. at 196 (noting that Mr. Johnson refused the Board's specific requests that he explain the nature of his client relationship or explain what steps he took to obtain the client's information). During his second petition for reinstatement, Mr. Johnson failed to correct the false statement made in his March 2015 affidavit pertaining to his bar memberships in the United States District Court for the District of Columbia and the United States District Court for the Eastern District of Virginia. We conclude that an opportunity to correct is not in order given Mr. Johnson's repeated refusal to provide requested information. *Cf. In re Weekes, supra* note 5, 990 A.2d at 474 (noting that the Board in *In re Susman* weighed this factor in favor of Mr. Susman because he was "honest and non-evasive during his disciplinary proceedings").

The third *Susman* factor is the most critical to our analysis in this case — whether "fairness to the respondent suggest[s] that an opportunity to correct is in order" and "[i]f so, would *nunc pro tunc* treatment adequately protect the public interest." *Id*. at 474. Mr. Johnson has had a total of eight opportunities to file a compliant affidavit and has failed to do so. He did not comply with the requests

from Disciplinary Counsel and the Board to correct his affidavit, but he claims that his personal circumstances and the resistance he encountered from Disciplinary Counsel made it difficult for him to comply. He asserts that he never received the order of disbarment from the United States District Court of the District of Columbia. He further asserts that he was not aware of the United States District Court for the Eastern District of Virginia's requirement to report his disbarment in other jurisdictions. Finally, Mr. Johnson argues that whether he correctly reported the status of each of his bar memberships is not germane to the purpose of 14 (g) because it is merely a technical requirement of the rule. He questions Disciplinary Counsel's insistence on his filing a new affidavit, which, he argues, would essentially state what Disciplinary Counsel already knows — that he was not licensed to practice before the United States District Court for the District of Columbia and the United States District Court for the Eastern District of Virginia. He argues, in essence, that their insistence on compliance with this technical requirement elevates form over substance, *see In re Hook*, 912 A.2d 554, 555 & n.9 (D.C. 2006) (describing failure to list bar membership as a technical deficiency), and, at oral argument, described their actions as a "pedantic" enforcement of the 14 (g)(2) requirement.

However, contrary to Mr. Johnson's contentions, the requirement to list one's bar membership in a 14 (g) affidavit following disbarment in this jurisdiction is not merely "pedantic." Indeed, it is germane to the purpose of 14 (g) because it "safeguards against the possibility that an attorney who has been disciplined in one jurisdiction may escape the notice of another and practice without reciprocal sanction." *In re Weekes, supra* note 5, 990 A.2d at 473. While there is no evidence that Mr. Johnson continued to practice in the United States District Court for the Eastern District of Virginia or the United States District Court for the District of Columbia after 2001, he did escape the notice of the Eastern District of Virginia and claimed membership in that bar without reciprocal sanction from that federal court from June 2001 until March 2015 when the District of Columbia's Disciplinary Counsel — not Mr. Johnson — finally reported his revoked license. Even considering the life events that befell Mr. Johnson following his disbarment, his claimed lack of knowledge of the reporting rule does not excuse his failure to comply with this requirement.

A disbarred attorney who is seeking reinstatement to the practice of law — a profession heavily dependent on self-motivated adherence to ethical rules — has the obligation to show compliance with the rules governing the District of Columbia bar and the disciplinary rules in other jurisdictions. Failure to comply

with such disciplinary rules in this case led to Mr. Johnson submitting a sworn affidavit that contained a false statement.

Additionally, as the Board noted, despite Mr. Johnson's assertions that he was licensed to practice in both the United States District Court for the District of Columbia and the United States District Court for the Eastern District of Virginia, once Disciplinary Counsel presented him with evidence to the contrary, he still failed to take the necessary steps to correct his March 2015 affidavit and to report his revoked license to the Eastern District of Virginia. Contrary to Mr. Johnson's contentions, his last affidavit cannot be categorized as "full, though technically imperfect compliance" for the purposes of receiving *nunc pro tunc* treatment. *Cf. In re Gardner*, 650 A.2d at 697–98; *In re Susman, supra*, 876 A.2d at 638. We therefore conclude that, in the event Mr. Johnson files a compliant affidavit in the future, he is not entitled to receive *nunc pro tunc* treatment dating back to any of his previously filed 14 (g) affidavits.

Consequently, Mr. Johnson will be subject to the required five-year period of disbarment following the date of submission of the compliant affidavit before he will be eligible for reinstatement pursuant to D.C. Bar R. XI, § 16 (c). To be in full compliance, Mr. Johnson must submit a new affidavit that addresses all of the

requirements in 14 (g)(1)-(3). Specifically, his affidavit must correct the false statement in his prior affidavit regarding his license and eligibility to practice law in the United States District Court for the Eastern District of Virginia as of June 18, 2001, and the United States District Court for the District of Columbia as of August 7, 2002.

### III. Conclusion

Accordingly, it is

ORDERED that Mr. Johnson's March and August 2015 affidavits fail to comply with D.C. Bar R. XI, § 14 (g). Mr. Johnson is not eligible for reinstatement, and his second petition is dismissed.